UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11 B 44072 |
| | ) | |
| JOSEPH STANLEY VARAN, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Donald R. Cassling |
| | ) | |

## MEMORANDUM OPINION

Patrick S. Layng, the United States Trustee (the "U.S. Trustee") has filed this motion against attorneys Adam B. Goodman and Jessica Tovrov ("Goodman and Tovrov") seeking sanctions under 11 U.S.C. §§ 105 and 329 (the "Motion for Sanctions"). For the reasons stated below, the Court grants the Motion for Sanctions.

## I.    JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II.    BACKGROUND

The material facts are not in dispute. Joseph Stanley Varan (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 30, 2011 (the "Petition Date"). During the time the Debtor was represented by his first counsel in this case, Erica Crohn Minchella of the law firm Minchella & Associates, Ltd., the Debtor filed and twice amended his Schedule B as follows:

1. On November 10, 2011, the Debtor filed his original Schedule B (the "Original Schedule B"). In that Schedule, the Debtor represented that as of the Petition Date, he did not have any interests in: (i) financial accounts; (ii) insurance policies; (iii)

incorporated or unincorporated businesses; or (iv) partnerships. (Docket No. 11, Schedule B at lines 2, 9, 13, & 14.)

2.  On December 13, 2011, he filed an amended Schedule B (the "First Amended Schedule B"), repeating his original representations that he did not have such interests. (Docket No. 29, Schedule B at lines 2, 9, 13, & 14.)

3.  On March 20, 2012, the Debtor filed yet another amended Schedule B (the "Second Amended Schedule B"), this time disclosing that he had an interest in a checking account at Hinsdale Bank with a value of $500. (Docket No. 61, Schedule B at line 2.) However, the Second Amended Schedule B otherwise repeated the Debtor's representation made in the earlier schedules that he did not have interests in: (i) any other financial accounts; (ii) insurance policies; (iii) incorporated or unincorporated businesses; or (iv) partnerships. (*Id.* at lines 2, 9, 13, & 14.).

The multiple amendments caused the U.S. Trustee to question the accuracy and completeness of the Debtor's Petition, Schedules, and Statement of Financial Affairs. (Docket No. 52.) In February 2012, the Court granted the U.S. Trustee's motion seeking authorization of discovery from the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure in connection with its investigation. (Docket No. 57.) The U.S. Trustee served the Debtor with a subpoena on April 26, 2012, under Bankruptcy Rule 2004. (Mot. for Sanctions at ¶ 14) (Docket No. 211.)

Subsequently, on November 19, 2012, the Debtor replaced Minchella as his counsel, engaging, in Minchella's stead, Goodman and Tovrov of the law firm Goodman Tovrov Hardy & Johnson LLC. (*See* Response to Mot. for Sanctions at p. 9) (Docket No. 227.) Also on November 19, 2012, the Debtor appeared for his Bankruptcy Rule 2004 examination, represented by Tovrov. (Mot. for Sanctions at ¶ 11.)

On November 27, 2012, the U.S. Trustee initiated an adversary proceeding against the Debtor (the "Adversary Proceeding"), objecting to his discharge under 11 U.S.C. § 727(a)(2)(A),

(a)(3), (a)(4), (a)(5), and (a)(6), alleging that he had made false oaths concerning his interests in

financial accounts and business entities.  Specifically, the U.S. Trustee alleged that:

> The [Debtor's] sworn representations in his [Original Schedule B,
> First Amended Schedule B, and Second Amended Schedule B],
> that he holds no stock in any incorporated entity, no interest in any
> unincorporated entity, and no interest in any partnership or joint
> venture, are false.

> The [Debtor's] sworn representations in his [Original Schedule B,
> First Amended Schedule B, and Second Amended Schedule B],
> wherein he omits his interests in certain financial accounts,
> including accounts at Chase, Fifth/Third Bank, and Bank of
> America, are false.

(Adv. No. 12-01823, Docket No. 1. at ¶¶ 108 & 109.)

After filing this Adversary Proceeding, the U.S. Trustee obtained the following additional

discovery from the Debtor, which revealed the existence of the Debtor's interests in personal

property that were not disclosed in his Schedules:

1. In January and February 2013, the Debtor, through Goodman,
   produced insurance documents and certain bank records
   responsive to the U.S. Trustee's subpoena dated April 26,
   2012. (Mot. for Sanctions at ¶¶ 14-17.) The bank records that
   were produced include the Debtor's individual bank accounts
   and those held jointly with his wife, Rebecca Varan, at several
   banks. (*Id.* at ¶¶ 15-17.)

2. In April 2013, the Debtor, through Goodman, produced records
   pertaining to sixty-two (62) entities with which the Debtor was
   directly or indirectly involved as a member, manager or
   otherwise. (*Id.* at ¶ 18.)

3. In May 2013, the Debtor, through Goodman, provided the U.S.
   Trustee with Defendant's Response to Plaintiff's First Set of
   Interrogatories. (*Id.* at ¶ 19.) In response to Interrogatories 5
   and 6, the Debtor identified LLC 1 Plus 1 as an entity in which
   he held a legal or equitable interest from October 2005 to the
   present, and named LLC 1 Plus 1's account at Chase Bank as a
   financial account in which he had a legal or equitable interest
   between October 2009 and the present. (Ex. A to Mot. for
   Sanctions at ¶¶ 5 & 6.)

On June 20, 2013, the Debtor appeared for his deposition, represented by Goodman. (Mot. for Sanctions at ¶ 20.) During the deposition, the Debtor gave the following responses to the U.S. Trustee's questions regarding his interest in LLC 1 Plus 1:

> Q: What is your interest in this entity?
> A: I'm a member.
> Q: Are you the only member?
> A: Yes.
> Q. Does anyone else have any interest in the entity?
> A: No.

(Ex. B to Mot. for Sanctions at pp. 59-60.)

Upon being presented with a certificate of designation for LLC 1 Plus 1, which named the Debtor as a member, the Debtor was further questioned as follows:

> Q: Do you know who signed your signature?
> A: I do not.
> Q: Does that handwriting look at all familiar to you?
> A: It does not.
> Q: So how did you first learn that you had an interest in this entity?
> A: When I had to do some research, when you had asked to get all the LLC documents, and I started getting all these other documents, I identified that this is my name. That's when – the first time I had learned about it.
> Q: You didn't previously know that LLC 1 Plus 1 was yours?
> A: No. I thought I was a manager of the company, not a member.
> Q: So only in the year 2013 did you learn that you were a member?
> A: I believe so.

(*Id.* at pp. 70-72.)

After this deposition, the Debtor produced copies of checks drawn on an account held in the name of LLC 1 Plus 1 at Chase Bank. (Mot. for Sanctions at ¶ 21.) Among the payments evidenced in those records were five payments made to "Goodman Law Offices" and "Adam Goodman" from March 6, 2013 through June 18, 2013, totaling $19,807.34. (*Id.*)

Following the U.S. Trustee's pursuit of discovery of the Debtor's assets, the Debtor, through his counsel, Goodman and Tovrov, amended his Schedule B two final times as follows:

4

1. On September 30, 2013, the Debtor filed an amended Schedule B (the "Third Amended Schedule B"). (Docket No. 189.) The Third Amended Schedule B indicates that, as of the Petition Date, the Debtor had no personal property other than 25% interests in two LLCs, neither of which is LLC 1 Plus 1. (*See* Third Amended Schedule B at line 13.)

2. On October 1, 2013, the Debtor filed a further amended Schedule B (the "Fourth Amended Schedule B"). (Docket No. 191.) The Fourth Amended Schedule B is a compilation of page 1 from the Third Amended Schedule B and the Original Schedule B. It indicates that, as of the Petition Date, the Debtor had no interests in any: (i) financial accounts; (ii) insurance policies; (iii) partnerships; or (iv) stock in any incorporated entity or unincorporated entity (except for the 25% interests in two LLCs as disclosed in the Third Amended Schedule B). (*Id.* at lines 2, 9, 13, & 14.)

Ultimately, the Debtor voluntarily waived his discharge under § 727(a)(10) and the Adversary Proceeding was closed on November 12, 2013. (Docket Nos. 194, 195, & 196.)[1]

On December 10, 2013, more than a year after Goodman and Tovrov had been retained to represent the Debtor, Goodman filed a Disclosure of Compensation of Attorney for Debtor (the "Compensation Disclosure Statement") indicating that his law firm had received $29,601.09 for legal fees and expenses related to the Debtor's bankruptcy case. (Docket No. 204.) Significantly, the Compensation Disclosure Statement was filed only after the U.S. Trustee provided Goodman and Tovrov with a prepared draft of the Motion for Sanctions that admonished them for failing to file a fee disclosure statement as required by § 329(a). (Mot. for Sanctions at ¶ 39.)

On January 2, 2014, the U.S. Trustee filed his Motion for Sanctions. The Motion focuses on Goodman and Tovrov's failures to make two types of disclosures: (1) accurate disclosures of the Debtor's property interests in his Schedule B and (2) timely disclosure of their fee

---

[1] The Debtor filed a Motion to Vacate Voluntary Waiver of Discharge on November 27, 2013. (Docket No. 198.) The motion was denied by the Court on February 4, 2014. (Docket No. 222.)

arrangements with the Debtor. As sanctions, the Motion seeks (a) disgorgement of their fees, (b)

payment of the U.S. Trustee's fees incurred in bringing this Motion, and (c) mandatory

attendance by both Goodman and Tovrov at an ethics course taught at an ABA-approved law

school. Goodman and Tovrov filed their Response to the Motion for Sanctions on February 18,

2014, and the U.S. Trustee filed his Reply on March 3, 2014.

The parties have waived the opportunity for an evidentiary hearing. *See In re Rimsat,*

*Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000). Thus, the Court will decide the matter based on the

pleadings filed by the parties. *See In re Vokac*, 273 B.R. 553, 555 (Bankr. N.D. Ill. 2002). The

Court will also take judicial notice of all pleadings filed by the parties and of the case docket.

*See In re Kowalski*, 402 B.R. 843, 846 (Bankr. N.D. Ill. 2009).

### III.   <u>APPLICABLE STANDARDS</u>

#### A.  Standard for Sanctions Under § 105(a)

Section 105(a) of the Code gives bankruptcy courts the power to impose sanctions. *In re*

*McNichols*, 258 B.R. 892, 903 (Bankr. N.D. Ill. 2001) (citing *Rimsat*, 212 F.3d at 1049); *see also*

*In re Collins*, 250 B.R. 645, 656 (Bankr. N.D. Ill. 2000). Section 105(a) provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a).

"Section 105 grants broad powers to bankruptcy courts to implement the provisions of

Title 11 and to prevent an abuse of the bankruptcy process." *In re Volpert,* 110 F.3d 494, 500

(7th Cir. 1997). This section empowers bankruptcy courts to sanction conduct that abuses the judicial process. *Id.; see also McNichols*, 258 B.R. at 903 (citing *Collins*, 250 B.R. at 656-57).

Despite the broad language of § 105(a), courts must exercise caution to limit the circumstances under which the statute is used. *Disch v. Rasmussen,* 417 F.3d 769, 777 (7th Cir. 2005). Thus, in imposing sanctions, a "court should ordinarily rely on available authority conferred by statutes and procedural rules, rather than its inherent power, if the available sources of authority would be adequate to serve the court's purposes." *Rimsat*, 212 F.3d at 1048 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). However, "a sanctioning court is not required to apply available statutes and procedural rules in a piecemeal fashion where only a broader source of authority is adequate to justify all the necessary sanctions." *Id.* at 1049 (citing *Chambers*, 501 U.S. at 50-51). Thus, a court may resort to § 105(a) and its inherent powers "to ensure that all the culpable parties receive[] an appropriate sanction[.]" *Id.*

## B. Standard for Disgorgement of Fees

Section 329(a) requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a). Rule 2016(b) of the Federal Rules of Bankruptcy Procedure requires debtor's counsel to file this disclosure statement within fourteen days after the order for relief or at such other time as the court may direct. In addition, the Rule further provides that a supplemental statement of compensation must be filed within fourteen days after any payment or agreement not previously disclosed. Fed. R. Bankr. P. 2016(b). All compensation received during the applicable period must be disclosed, regardless of whether the attorney will be

compensated from the estate or from some other source. *In re Jackson,* 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009) (citing *In re Redding,* 263 B.R. 874, 878 (8th Cir. BAP 2001)).

Fee disclosure obligations of debtor's counsel are mandatory, not permissive. *In re Gluth Bros. Constr., Inc.,* 459 B.R. 351, 361 (Bankr. N.D. Ill. 2011) (citing *In re Mortakis,* 405 B.R. 293, 297 (Bankr. N.D. Ill. 2009)); *see also In re Griffin,* 313 B.R. 757, 764-65 (Bankr. N.D. Ill. 2004). "Because disclosure under section 329(a) and Rule 2016(b) is 'central to the integrity of the bankruptcy process,' failure to disclose is sanctionable." *Jackson,* 401 B.R. at 340 (quoting *In re Andreas,* 373 B.R. 864, 872 (Bankr. N.D. Ill. 2007)).

Courts enjoy broad discretion in determining appropriate remedies for violations of the fee disclosure requirements. *White v. Coyne, Schultz, Becker & Bauer, S.C. (In re Pawlak),* 483 B.R. 169, 180 (Bankr. W.D. Wis. 2012). The sanctions can consist of a variety of penalties, including partial or total denial of compensation, as well as partial or complete disgorgement of fees already paid. *Jackson,* 401 B.R. at 340-41; *see also Mortakis,* 405 B.R. at 297. "The extent to which compensation should be denied rests with the Court's sound discretion." *Kowalski,* 402 B.R. at 848; *Gluth Bros. Constr.,* 459 B.R. at 361; *In re Prod. Assocs., Ltd.,* 264 B.R. 180, 186 (Bankr. N.D. Ill. 2001) ("Failure to timely file the disclosure could result in the loss of the attorney's fee or other such sanctions the court may decide to impose, whether or not the estate is harmed by the delay."). "[M]any courts have held that '[f]ailure to meet the disclosure requirements alone is grounds for disgorgement.'" *In re Waldo,* 417 B.R. 854, 893-94 (Bankr. E.D. Tenn. 2009) (quoting *Griffin,* 313 B.R. at 765); *see also Jackson,* 401 B.R. 340 (citing *Andreas,* 373 B.R. at 872); *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.),* 4 F.3d 1556, 1565 (10th Cir. 1993), *cert. denied,* 510 U.S. 1114 (1994) (stating that "an attorney

who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services").

## C. Burden of Proof

The U.S. Trustee bears the burden of proof on its Motion for Sanctions. However, the standard of proof required for the U.S. Trustee to prevail on its motion does not appear to be decided in this Circuit, and other Circuits are split on the issue.

Were this matter to involve sanctions for civil contempt,[2] it is well-established in this Circuit that proof by clear and convincing evidence would be required of the complaining party.[3] *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989). The clear and convincing evidence standard is also employed where the sanctions at issue involve suspension from practice. *See In re Liou*, 503 B.R. 56, 78 (Bankr. N.D. Ill. 2013); *see also In re Cochener*, 360 B.R. 542, 572-73 (Bankr. S.D. Tex. 2007), *aff'd in part, rev'd in part*, 382 B.R. 311 (S.D. Tex. 2007), *rev'd*, 297 Fed. Appx. 382 (5th Cir. 2008).

Here, the U.S. Trustee seeks sanctions under the Court's inherent powers granted by § 105(a), and courts in other Circuits are split on the standard of proof required for the issuance of sanctions under a court's inherent powers. Some courts hold that when a court uses its inherent powers to sanction an attorney, the standard is a preponderance of the evidence, unless

---

[2] This matter is not to be treated as a matter of civil contempt because "[i]n order to prevail on a contempt petition, the complaining party must demonstrate . . . that the respondent has violated the express and unequivocal command of a *court order*." *Andreas*, 373 B.R. at 874 (quoting *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993)) (emphasis in original). "Without a court order specifying what must be done there can be no civil contempt. *Id.* (citing *In re Rimsat, Ltd.*, 208 B.R. 910, 913 (Bankr. N.D. Ind. 1997)); *see also U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001).

[3] "The clear and convincing standard requires proof falling between standards of preponderance of the evidence and beyond a reasonable doubt." *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433717, at *6 (N.D. Ill. July 2, 2002) (citing *Brown v. Bowen*, 847 F.2d 342, 345-46 (7th Cir. 1988)).

the sanction is disbarment or suspension. Where the sanction is disbarment or suspension, those courts hold the standard is clear and convincing evidence. *See, e.g., Cochener*, 360 B.R. at 573-74. Other courts, reasoning that most inherent power sanctions are fundamentally punitive, require a heightened standard of proof by clear and convincing evidence before imposing any types of sanctions. *See, e.g., Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1476-77 (D.C. Cir. 1995).

The sanctions sought by the U.S. Trustee here are not as severe as others on the spectrum of those available to the Court. Rather, they are of the type commonly imposed by bankruptcy courts when warranted. Further, while the sanctions sought in this case are in many ways similar to those imposed for civil contempt, Goodman and Tovrov have not violated a court order, and therefore this matter will not be treated as a motion for contempt. Given that there is no applicable binding standard of proof in this Circuit, the Court will apply the more conservative clear-and-convincing-evidence standard.

## IV.   **DISCUSSION**

The U.S. Trustee seeks sanctions against Goodman and Tovrov under §§ 105 and 329 for their alleged failure to (1) file a materially accurate Schedule B on behalf of the Debtor, and (2) timely file a fee disclosure statement required under § 329(a) and Bankruptcy Rule 2016(b). Specifically, the U.S. Trustee asks the Court to require Goodman and Tovrov to (1) complete a Professional Responsibility course at an ABA-approved law school, (2) disgorge all sums they received in this case to the Chapter 7 Trustee, and (3) reimburse the U.S. Trustee for its attorney's fees and costs relating to the Motion for Sanctions.

## A. Filing of Inaccurate Schedules

While both failures of Goodman and Tovrov are serious, the U.S. Trustee has placed special emphasis on his allegation that Goodman and Tovrov filed the Third Amended Schedule B and Fourth Amended Schedule B knowing that they were materially inaccurate. (Reply to Mot. for Sanctions at ¶ 1.) This emphasis is warranted, given the central importance to the bankruptcy process of full and complete disclosure by debtors of their debts and assets.

### 1. Duty to Disclose Assets

"[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003). Complete financial disclosure is necessary to ensure the right of the trustee and the creditors to evaluate the case. *Grochocinski v. Morgan (In re Morgan)*, Bankr. No. 09-42248, Adv. No. 11-00580, 2013 WL 4067591, at *9 (Bankr. N.D. Ill. Aug. 12, 2013); *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007). Filing schedules that omit a debtor's material interests in property provides grounds for denial of a debtor's discharge. *Morgan*, 2013 WL 4067591, at *9.

"Debtors have an absolute duty to report whatever interests they hold in property[.]" *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992). These interests must be fully disclosed in debtors' bankruptcy schedules. *See Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). Disclosure is mandatory even if a debtor believes an asset to be worthless or unavailable to the bankruptcy estate. *Yonikus*, 974 F.2d at 904; *see also In re Gonzalez*, Bankr No. 99-80751, 2001 WL 34076427, at *2 (Bankr. C.D. Ill. Aug. 22, 2001) ("A debtor has no discretion to exclude exempt or worthless property."). Thus, a debtor must "accurately and completely list all ownership interests he or she holds in property, and it is not for the debtor 'to decide which

assets are to be disclosed to creditors.'" *In re Mosher*, 417 B.R. 772 (Bankr. N.D. Ill. 2009)

(quoting *Neary v. Stamat (In re Stamat)*, 395 B.R. 59, 73 (Bankr. N.D. Ill. 2008)).

A debtor's duty to ensure the accuracy and completeness of his schedules is one which

continues throughout the bankruptcy case. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377-78

(9th Cir. BAP 2004), *aff'd*, 212 Fed. Appx. 589 (9th Cir. 2006). Thus, errors in previously filed

schedules must be corrected. *See U.S. Trustee v. Bresset (In re Engel)*, 246 B.R. 784, 794

(Bankr. M.D. Pa. 2000) (citing *Torgenrud v. Benson (In re Wolcott)*, 194 B.R. 477, 486 (Bankr.

D. Mont. 1996)). "The continuing nature of the duty to assure accurate schedules of assets is

fundamental because the viability of the system of voluntary bankruptcy depends upon full,

candid, and complete disclosure by debtors of their financial affairs." *Searles*, 317 B.R. at 378.

Nor does the duty of disclosure fall on the debtor alone. The debtor's attorney has an

independent obligation to "review [the schedules] with his client before they become a part of

the public record." *See Acclaim Legal Serv., PLLC v. Allard (In re Shannon)*, No. 09-CV-12710,

Bankr. No. 09-40867, 2010 WL 1246691, at *4 (E.D. Mich. Mar. 25, 2010) (affirming a

bankruptcy court's decision sanctioning debtor's attorneys for filing inaccurate schedules). This

includes an "obligation to reasonably and expeditiously investigate [the schedules'] accuracy and

tender amendments, if necessary." *Engel*, 246 B.R. at 793. Moreover, "attorneys must take

emphatic care to encourage their clients to comply with the requirements of the Bankruptcy Code

and the Bankruptcy Rules." *Cochener*, 360 B.R. at 598.

Congress emphasized its concern with full and complete disclosure by debtors and their

counsel when it enacted the 2005 BAPCPA amendments. Those amendments added provisions

which impose new duties on debtors' attorneys in connection with the filing of the bankruptcy

petition and schedules. *See* 11 U.S.C. § 707(b)(4)(C) and (D); *see also In re Moffett*, No. 10-

71920, 2012 WL 693362, at *2 (Bankr. C.D. Ill. Mar. 2, 2012); *In re Robertson*, 370 B.R. 804,

809 (Bankr. D. Minn. 2007) (noting that BAPCPA has imposed "newly-heightened duties of

verification as to accuracy" of documents filed by the debtor in bankruptcy). Specifically,

§ 707(b)(4)(D) provides that "[t]he signature of an attorney on the petition shall constitute a

certification that the attorney has no knowledge after an inquiry that the information in the

schedules filed with such petition is incorrect."[4] 11 U.S.C. § 707(b)(4)(D).

Courts have taken notice of these amendments and reiterated their commitment to

enforcing them:

> [D]ebtors' counsel are to exercise significant care as to the
> completeness and accuracy of *all* recitations on their client['']s
> schedules, after they have made a factual investigation and legal
> evaluation that conforms to the standards applicable to any
> attorney filing a pleading, motion, or other document in a federal
> court. The content of a debtor's petition and schedules is relied on,
> and should have the quality to merit that reliance.

*Triepke*, 2012 WL 1229524, at *5 (quoting *Robertson*, 370 B.R. at 809, n.8) (emphasis in

original).

### 2.  The Third Amended Schedule B and the Fourth Amended Schedule B Were Inaccurate

The U.S. Trustee argues that documents produced during discovery and the Debtor's

deposition testimony prove that Goodman and Tovrov knew or should have known that the Third

Amended Schedule B and the Fourth Amended Schedule B were materially inaccurate as filed.

---

[4] Here, the Third Amended Schedule B and Fourth Amended Schedule B were not filed with the Petition, and therefore, are arguably not within the reach of § 707(b)(4)(D). The Court will not decide the applicability of § 707(b)(4)(D) to the facts of this case, as this issue is not before it. However, these provisions are noteworthy, as they are further illustrations of the "policy that a debtor's attorney exercise independent diligence and care in ensuring that there is evidentiary support for the information contained in his client's bankruptcy schedules." *In re Triepke*, No. 09-21855, 2012 WL 1229524, at *5 (Bankr. W.D. Mo. Apr. 12, 2012). Moreover, as previously stated above, the duty to ensure the accuracy and completeness of the Debtor's Schedules is one which continues throughout the bankruptcy case. *See Searles*, 317 B.R. at 377-78. Thus, errors in previously filed Schedules must be corrected. *See Engel*, 246 B.R. at 794 (citing *Wolcott*, 194 B.R. at 486).

(Mot. for Sanctions at ¶¶ 32-36.)   Specifically, the Third Amended Schedule B and the Fourth
Amended Schedule B omitted the following material assets in which the Debtor had an interest:
(1) the Debtor's 100% membership interest in LLC 1 Plus 1; (2) the Debtor's interests in several
financial accounts; (3) the Debtor's interests in numerous business entities; and (4) the Debtor's
interests in certain life insurance policies.  (*Id.* at ¶ 37.)  The Court agrees that these omissions
were material and also agrees that the evidence shows that Goodman and Tovrov were either
aware of these assets or should have been aware of them at the time the Third Amended
Schedule B and the Fourth Amended Schedule B were filed.

Goodman and Tovrov do not dispute that the Third Amended Schedule B and the Fourth
Amended Schedule B they filed on behalf of the Debtor were false.  Rather, they contend that the
falsity was "harmless" because the unlisted assets had been disclosed to the U.S. Trustee through
discovery in the Adversary Proceeding, and that many of the financial accounts and interests in
life insurance policies were of *de minimis* value.  (Response to Mot. for Sanctions at pp. 3-4.)
This argument misses the point.  A debtor has an absolute duty to disclose his assets in his
Schedules, regardless of the value of such assets.  *Yonikus*, 974 F.2d at 904.  Further, the Court
finds the disclosure of assets to the U.S. Trustee is not sufficient to comply with the Bankruptcy
Code's requirement of the filing of accurate Schedules with the Court.

Nor can Goodman and Tovrov credibly argue that they were unaware at the time of the
filings that the Third Amended Schedule B and the Fourth Amended Schedule B were false.  For
example, on the very day they were retained, November 19, 2012, they represented the Debtor at
a Rule 2004 examination conducted by the U.S. Trustee.  The primary focus of that examination
was whether the Debtor's Schedules were complete and accurate.  If that alone was not enough
to alert them that this Debtor had a problem with accurately and completely disclosing his assets

in his Schedules, the U.S. Trustee's commencement of an Adversary Proceeding a little more than a week later, on November 27, 2012, could not have failed to command their attention. Once again, the central focus of the complaint in the Adversary Proceeding was the Debtor's lack of disclosure of his assets.

The Court therefore finds that Goodman and Tovrov became aware of the specifics of the Debtor's failure to disclose at least as early as November 27, 2012. From January through April 2013, the Debtor produced numerous records pertaining to his assets that had not been disclosed in the Schedules, and in May 2013, in response to the U.S. Trustee's Interrogatories, he identified LLC 1 Plus 1 as an entity in which he held an interest. Further, in June 2013, Goodman and Tovrov represented the Debtor at a deposition in the Adversary Proceeding, during which he was questioned about his numerous personal property interests, particularly his ownership of LLC 1 Plus 1.

Despite the persistent and overwhelming testimony and documents indicating that the Debtor's Schedules were materially inaccurate, Goodman and Tovrov failed to completely disclose the Debtor's property interests when they filed the Third Amended Schedule B and the Fourth Amended Schedule B. These documents, like their predecessors, indicated that the Debtor did not have interests in any financial accounts or insurance policies, and that he held interests in only two business entities, none of which is LLC 1 Plus 1. The Court finds these representations were false, and that the Debtor held interests in numerous financial accounts and entities, as well as certain life insurance policies.

Goodman and Tovrov's failure to disclose the Debtor's interest in LLC 1 Plus 1 is especially troubling. They dispute the U.S. Trustee's assertion that the Debtor had an ownership interest in LLC 1 Plus 1, arguing that the Debtor "never accepted the [U.S. Trustee's] conclusion

about his ownership." (Response to Mot. for Sanctions at p. 3.) The Court finds this contention

to be disingenuous. The Debtor's response to Interrogatories and his June 20, 2013 deposition

testimony demonstrate that at least by the time of the deposition, the Debtor and his counsel,

Goodman and Tovrov, were made aware that he was the sole owner of LLC 1 Plus 1. Moreover,

a debtor's unsubstantiated and self-serving beliefs do not control whether or not he has an

interest in a particular asset. Accordingly, the Court finds that Goodman and Tovrov were aware

or should have been aware that the Third Amended Schedule B and the Fourth Amended

Schedule B were materially false at the time they were filed.

### 3. Goodman and Tovrov's Violation of Ethical Duties

In addition to arguing that their failures to disclose material assets in the Debtor's Third

Amended Schedule B and Fourth Amended Schedule B were "harmless" and *de minimis*,

Goodman and Tovrov argue that their ethical duties to zealously represent their client in the

Adversary Proceeding brought by the U.S. Trustee prevented them from filing accurate

Schedules. Had they done so, they argue, the accurate filing "would have been tantamount to

endorsing the legal theory presented in the [U.S. Trustee's] [A]dversary [P]roceeding that there

were material omissions in the earlier iterations of the Debtor's schedules." (Response to Mot.

for Sanctions at p. 7.) The Court rejects this excuse for the following reasons.

Goodman and Tovrov represented the Debtor generally in his bankruptcy case as well as

in the Adversary Proceeding in which the U.S. Trustee objected to his discharge. This dual

representation gave rise to at least two duties: (1) a duty to ensure that they zealously

represented the Debtor in the Adversary Proceeding and (2) a duty of candor to the Court with

respect to satisfying the disclosure requirements in the Debtor's bankruptcy case.

First, lawyers have a duty to "'zealously (but within the bounds of the law and ethical conduct) advance the client's interest.'" *O'Malley v. Novoselsky*, Nos. 10 C 8200, 11 C 110, 2011 WL 2470325, at *3 (N.D. Ill. June 14, 2011) (quoting *Midfirst Bank v. Curtis,* No. 3 C 4975, 2006 WL 2787485, at *2 (N.D. Ill. Sept. 22, 2006)). Second, lawyers have a duty of candor to the tribunal. *See* ABA Model Rules of Professional Conduct, Rule 3.3.[5]

Significantly, for purposes of this motion, "a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy." *United States Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 925 (4th Cir. 1995); *see also Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000) (noting that the comment to Rule 3.3 of the Rules of Professional Conduct for the Northern District of Illinois states that a lawyer's task of maintaining client confidence "is qualified by the advocate's duty of candor to the tribunal"). This interpretation does not denigrate a lawyer's duty to zealously represent his or her clients, for that duty is always understood to mean zealous representation *within the bounds of the law and ethical conduct*:[6]

> In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Within the framework of these Rules, however, many difficult issues of professional discretion can arise. Such issues must be resolved through the

---

[5] The Northern District of Illinois has generally adopted the American Bar Association's Model Rules of Professional Conduct as its rules of professional conduct. *See* Northern District of Illinois, Local Rule 83.50, "Rules of Professional Conduct"; *see also United States v. Williams*, 698 F.3d 374, 387, n. 1 (7th Cir. 2012). ABA Model Rule 3.3, titled "Candor Toward the Tribunal," is identical to Rule 3.3 of the Illinois Rules of Professional Conduct. *Compare* ABA Model Rules of Professional Conduct, Rule 3.3, *with* Illinois Rules of Professional Conduct, Rule 3.3.

[6] Courts recognize that a client's demands sometimes threaten to interfere with an attorney's duty of candor. Under such circumstances, the attorney may withdraw from the case. *See Engel*, 246 B.R. at 793 (stating that if a client refuses to cooperate with his attorney in filing accurate schedules, the attorney has cause to withdraw from the case).

exercise of sensitive professional and moral judgment guided by the basic
principles underlying the Rules. These principles include the lawyer's obligation
zealously to protect and pursue a client's legitimate interests, *within the bounds of
the law*, while maintaining a professional, courteous and civil attitude toward all
persons involved in the legal system.

Illinois Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities, no. 9 (emphasis

added.)

By statute and rule, attorneys representing debtors in bankruptcy cases have additional

obligations of candor that go far beyond what is expected of counsel in the ordinary civil lawsuit.

A debtor's counsel in a bankruptcy case is "obligated both ethically and as an officer of the court

not to file schedules and other disclosure documents that the counsel believes inaccurate."

*Engel*, 246 B.R. at 793.   In addition, "[t]he obligation to file accurate schedules includes a

continuing duty to correct errors in filed documents." *Id.* at 794.

Goodman and Tovrov have argued that their simultaneous representation of the Debtor in

both his bankruptcy case and in the Adversary Proceeding created a potential conflict, between

their duty of candor to the bankruptcy court in the former and their duty to zealously represent

their client in the latter.[7]   While the Court recognizes the apparent dilemma this may have

presented to counsel, it nevertheless holds them responsible for their failure to follow the clear

guidance laid out in the case law, statutes, and rules cited above for resolving the very situation

in which they found themselves.  As those sources unequivocally state, counsel's duty of zealous

advocacy is circumscribed by "the bounds of the law and ethical conduct."  Here, the disclosure

requirements of the Bankruptcy Code defined "the bounds of the law" within which Goodman

---

[7] As stated above, Goodman and Tovrov argue in their response to the Motion for Sanctions that filing an
amended Schedule B that disclosed all of the assets identified in the Motion for Sanctions "would have
been tantamount to endorsing the legal theory presented in the [U.S. Trustee's] [A]dversary [P]roceeding
that there were material omissions in the earlier iterations of the Debtor's schedules."  (Response to Mot.
for Sanctions at p. 7.)

and Tovrov were compelled to constrain their zealousness as advocates. The ethical duty of candor before the bankruptcy court, which is part and parcel to a debtor's duty of disclosure, trumps (or at least defines the boundaries of) the duty of zealous advocacy. Goodman and Tovrov inverted that hierarchy and elevated their duty to zealously represent their client above their duty of candor to the Ccourt. They did so by knowingly filing an inaccurate and incomplete Schedule B in the bankruptcy case for the admitted purpose of avoiding an adverse inference in the Adversary Proceeding. In doing so, they violated Rule 3.3 of the Model Rules.

The Court therefore finds that Goodman and Tovrov knowingly and willfully caused the Debtor to file a materially false Third Amended Schedule B and Fourth Amended Schedule B. The Third Amended Schedule B and the Fourth Amended Schedule B failed to disclose numerous property interests of the Debtor of which Goodman and Tovrov were aware. The Court finds that their conduct amounts to bad faith and is an abuse of the judicial process. Moreover, their failures to ensure the filing of complete and accurate Schedules disrupted the bankruptcy process in this case by misleading the Court, the U.S. Trustee, the Chapter 7 trustee, and the creditors with respect to numerous assets owned by the Debtor for months after the case was filed.

Goodman and Tovrov's conduct in this case is sufficiently egregious to warrant the imposition of both monetary and non-monetary sanctions, as discussed below in part C of this Memorandum Opinion.[8]

## B. Compensation Disclosure Requirements

The U.S. Trustee contends that Goodman and Tovrov failed to comply with the attorney compensation disclosure requirements of § 329(a) and Bankruptcy Rule 2016(b) by failing to

---

[8] As observed by the Seventh Circuit, violations of the duty of candor to the court "can lead to sanctions even more severe than payment of an opponent's fees and costs." *Cleveland*, 200 F.3d at 1067.

timely file a statement of compensation. As a result, the U.S. Trustee argues that they should be required to disgorge all fees received from the Debtor in this case to the Chapter 7 Trustee.

Timely disclosure of the fee statement is mandatory and central to the integrity of the bankruptcy process: "a belated disclosure is insufficient to cure the failure to timely disclose fees received." *In re Valladares*, 415 B.R 617, 623 (Bankr. S.D. Fla. 2009). "If every attorney waited until he or she is caught to file a statement of disclosure, the entire concept of mandatory disclosure would become a farce." *Id*. Although case law supports a denial of all compensation for violations of fee disclosure requirements, courts may use their discretion to fashion a less drastic sanction where full disgorgement would be viewed as unduly harsh. *See Andreas*, 373 B.R. at 873 (stating that denial of all compensation to attorney would be unduly harsh where attorney achieved successful results for debtors); *see also In re Dental Profile, Inc.*, 446 B.R. 885, 909 (Bankr. N.D. Ill. 2011) (finding that disgorgement of attorney's fees would be unduly harsh in light of the work performed in the case). Thus, this Court has the discretion to "balanc[e] the need[] for sanctions with the inequity which would otherwise result from a complete denial of all fees and disbursements." *In re Tomczak*, 283 B.R. 730, 736 (Bankr. E.D. Wis. 2002).

### Goodman and Tovrov Failed to Comply with Fee Disclosure Requirements

It is undisputed that Goodman and Tovrov failed to file their Compensation Disclosure Statement in a timely fashion. Their law firm was retained by the Debtor on November 19, 2012. (Response to Mot. for Sanctions at p. 9). Under Bankruptcy Rule 2016(b), their disclosure statement was due fourteen days thereafter. Goodman filed the Compensation Disclosure Statement on December 10, 2013, more than a year after his firm was retained. Moreover, the Compensation Disclosure Statement was not filed until *after* the U.S. Trustee

provided Goodman and Tovrov with a draft of the Motion for Sanctions. (*See* Mot. for Sanctions at ¶ 39.)   The Court therefore finds that Goodman and Tovrov knowingly and willfully failed to comply with the § 329 and Bankruptcy Rule 2016(b) disclosure requirements.

Goodman and Tovrov, while not contesting that they failed to comply with the disclosure requirements prescribed by § 329(a) and Bankruptcy Rule 2016(b), argue that disgorgement of fees would be "grossly excessive" in light of the amount of work that they performed for the Debtor in this case.[9]   (Response to Mot. for Sanctions at p. 9.)

The Court rejects this argument for three reasons. First, the length of time Goodman and Tovrov waited to file their Compensation Disclosure Statement (over a year) was grossly excessive. Second, they only filed their Compensation Disclosure Statement after being prodded to do so by the U.S. Trustee when he gave them a courtesy copy of the Motion for Sanctions he intended to file against them. Finally, the severity of the sanctions imposed must be measured against the totality of Goodman and Tovrov's conduct, which includes multiple failures to ensure that the Debtor's Schedules were complete and accurate. This is not a case in which there was a single, isolated failure to disclose. This was a case where counsel failed to make mandatory disclosures over and over again. Indeed, Goodman and Tovrov's failure to timely file the Compensation Disclosure Statement is particularly egregious because the Statement reveals that they received compensation from LLC 1 Plus 1 – an asset of the Debtor that was not disclosed in the original or any amended Schedule B.

---

[9] In support of this argument, Goodman and Tovrov list the alleged successes they achieved for this Debtor. (Response to Mot. for Sanctions at p. 10.) The Court is not convinced that they achieved any significant successes for the Debtor, particularly because the Debtor did not receive a discharge of his debts. Moreover, the billing records they submitted demonstrate that the overwhelming majority of time billed to the Debtor is related to representation of the Debtor in the Adversary Proceeding. (*See* Private Ex. 1 to Response to Mot. for Sanctions.)

Thus, the Court finds that Goodman and Tovrov knowingly and wilfully violated the disclosure requirements of § 329(a) and Bankruptcy Rule 2016(b). The Court therefore finds that the U.S. Trustee has produced clear and convincing evidence establishing that sanctions are warranted against Goodman and Tovrov. The Court will impose sanctions as follows.

## C. Imposition of Sanctions

Goodman and Tovrov's actions, although constituting misconduct, are not morally reprehensible. However, that is not the threshold that must be met in deciding whether to award sanctions. Given the circumstances described above, the Court finds that monetary and non-monetary sanctions are warranted against Goodman and Tovrov. The bankruptcy system relies on attorneys following disclosure rules as well as meeting required ethical standards. In view of Goodman and Tovrov's repeated violations of these duties in this case, sanctions are necessary and appropriate. These sanctions are not intended to be punitive. Rather, they are intended to deter such conduct in the future and to maintain the integrity of the legal profession.

### 1. Fees Must Be Disgorged

Given the particular facts of this case, the Court finds that total disgorgement of fees is appropriate and is not unduly harsh. While there could be a situation in which failure to timely file the compensation disclosure statement would not necessitate total disgorgement of fees, under the circumstances of this case, the Court finds that the appropriate sanction is full disgorgement of the fee. The Court is particularly troubled by the following: (1) the length of time it took for Goodman and Tovrov to file the Compensation Disclosure Statement; (2) the fact that they did not do so until the U.S. Trustee advised them of the Motion for Sanctions prior to filing it; (3) the fact that a portion of the fees was paid from a non-disclosed LLC; and (4) the fact that they failed to seek an extension of the filing deadline from the Court.

In short, this case does not involve only one or two failures to disclose by Goodman and Tovrov. Rather, it is so riddled with their failures to disclose that such failures constitute a consistent course of, at best, extremely poor judgment by counsel and a willful disregard of their various disclosure obligations. As experienced practitioners, Goodman and Tovrov knew or should have known the extent of their disclosure obligations. Their failure to timely file the mandatory fee disclosure statement is part of a larger course of conduct in which they in effect aided and abetted their client's failure to disclose his assets. The Court finds that the concealment of the Debtor's assets was the result of a willful decision by Goodman and Tovrov, as evidenced at least in part by their rationale that filing complete Schedules could have been construed as an admission in the Adversary Proceeding.

Although the Court finds that Goodman and Tovrov's conduct warrants the sanction of full disgorgement of their compensation, it is not clear from the record whether the fees to be disgorged were property of the estate to be administered by the Chapter 7 trustee or post-petition property belonging to the Debtor. Because the Court cannot determine from the record who is entitled to receive the fees, the Court finds that all fees received by Goodman and Tovrov's law firm in this case must be disgorged to the Chapter 7 trustee, who will review the source of the payments and distribute the funds accordingly.

## 2. The U.S. Trustee Is Entitled to Fees and Costs

The Court finds that in addition to disgorgement, further sanctions are warranted for Goodman and Tovrov's filing of a materially false Third Amended Schedule B and Fourth Amended Schedule B. *See Shannon*, 2010 WL 1246691, at *5-6 (affirming bankruptcy court's imposition of sanctions under § 105(a) for attorney's failure to disclose tax refund); *Engel*, 246

B.R. at 787 (imposing sanctions on attorney pursuant to the court's inherent authority for filing inaccurate schedules).

The Court finds that the U.S. Trustee is entitled to his reasonable attorney's fees and costs incurred in pursuing the Motion for Sanctions. The Court is satisfied that this monetary sanction is necessary to discourage future incomplete and inaccurate filings by Goodman and Tovrov. *See Engel*, 246 B.R. at 795.

The U.S. Trustee shall submit an itemization of such fees and costs within thirty (30) days of the entry of this decision or by July 24, 2014. Goodman and Tovrov shall have fourteen (14) days thereafter or until August 7, 2014 to file any objections to that itemization. The Court will hold a hearing on the requested fees and costs on August 19, 2014 at 11:00 a.m.

### 3. Remedial Coursework Is Required

Finally, the Court finds that remedial legal education is an additional sanction that is appropriate in this case. Other courts have employed this sanction. *See, e.g.*, *Moffett*, 2012 WL 693362, at *4 (requiring attorney to take continuing legal education for violation of § 707(b)(4)(C)); *In re Burghoff*, 374 B.R. 681, 686-87 (Bankr. N.D. Iowa 2007) (requiring attorney to complete a law school or equivalent course in professional responsibility for violation of the Iowa Rules of Professional Conduct); *In re Maurice*, 167 B.R. 114, 128 (Bankr. N.D. Ill 1994) (requiring attorney to complete continuing legal education in the areas of bankruptcy and legal ethics for violation of Rule 9011).

This strikes the Court as a particularly relevant sanction because Goodman and Tovrov's conduct in this case concerning their inability to comply with the Bankruptcy Code's disclosure requirements convinces the Court that counsel did not appreciate the fact that their conduct was inappropriate and fell outside the bounds of ethical conduct. Their actions in this case also

reveal a serious professional deficiency: a lack of knowledge about their professional obligations when representing debtors in bankruptcy.

Goodman and Tovrov argue that continuing legal education courses would be more useful to practicing attorneys than the courses offered in law school, pointing out that the Illinois Supreme Court already requires all Illinois licensed attorneys to take six hours of ethics courses in each two year period. (Response to Mot. for Sanctions at p. 11.) However, their experience as practitioners and their apparent participation in the Illinois mandatory continuing legal education classes did not deter the serious misconduct that occurred in this case.

The Court finds that Goodman and Tovrov's ethical lapses call for the more rigorous method of instruction offered in a law school course on professional responsibility. Such remedial coursework strikes the Court as more meaningful than the continuing legal education already required in Illinois. An understanding of and compliance with requirements of the Bankruptcy Code and Rules is essential to the practice of bankruptcy law. This sanction is necessary to ensure that they have the requisite knowledge and ability to represent debtors within the bounds of ethics and the Bankruptcy Code.

Accordingly, Goodman and Tovrov are ordered to complete a course on professional responsibility at an ABA-approved law school. They must complete the course within one year of the date of this Opinion. Upon completing the course, they are required to file a certificate with the Court certifying which course they have attended, as well as proof of completion. Should they fail to timely comply with this sanction, the Court will recommend further actions to the disciplinary authorities as may be appropriate.

## V.   CONCLUSION

For the foregoing reasons, the Court grants the U.S. Trustee's Motion for Sanctions and finds that sanctions against Goodman and Tovrov are warranted. The following sanctions shall be imposed: (1) disgorgement of all fees received in this bankruptcy case and the related Adversary Proceeding to the Chapter 7 trustee within fourteen (14) days; (2) the reimbursement to the U.S. Trustee for his attorney's fees and costs relating to this Motion for Sanctions; and (3) completion of a professional responsibility course at an ABA-approved law school within one year of this ruling.

The U.S. Trustee shall submit an itemization of his fees and costs within thirty (30) days of the entry of this decision or by July 24, 2014. Goodman and Tovrov shall have fourteen (14) days thereafter or until August 7, 2014 to file any objections to that itemization. The Court will hold a hearing on the requested fees and costs on August 19, 2014 at 11:00 a.m.

A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: June 24, 2014

Donald R. Cassling
**Donald R. Cassling**
**United States Bankruptcy Judge**